We therefore hold that we have jurisdiction in this case, and that the prisoner should be discharged.

*H. M. Rulison, L. B. Sawyer, E. M. Ballard* and *Froome Morris,* for the petitioner.

*Frank F. Dinsmore* and *Wm. L. Dickson,* contra.

## RECOVERY OF MONEY PAID ON ILLEGAL BRIDGE CONTRACTS.

[Circuit Court of Sandusky County.]

THE STATE OF OHIO, EX REL M. W. HUNT, PROSECUTING ATTORNEY, v. S. M. FRONIZER ET AL.

Decided, May 19, 1906.

*Actions—For Recovery of Money Wrongfully paid out of County Treasury—Section 1277—Empowering Prosecuting Attorney to Bring Suit—Auditor's Certificate that Money is in Treasury to Meet Contract—Failure to Comply with Requirement of Section 2834b with Reference to—Res Judicata—Voluntary Payment—Equitable Defenses.*

1. Section 1277, Revised Statutes, as amended April 25, 1898, authorizing the prosecuting attorney to institute actions in the name of the state to recover back for the use of the county public moneys misapplied, withheld from, or illegally drawn out of the county treasury, or to recover for the benefit of the county damages resulting from illegal contracts, does not give to the public when thus represented by the prosecutor a new and different cause of action from any theretofore existing in its favor, but merely confers upon the prosecuting attorney authority to represent the public in suits upon causes of action which are not created by the statute and are not new. *State, ex rel Schwartz,* v. *Zumstein et al,* 4 C. C., 268, and *Jones, Auditor,* v. *Commissioners of Lucas County,* 11 C. C., 136, followed and approved; *Jones, Auditor,* v. *Commissioners of Lucas County,* 57 O. S., 189, doubted; *Buchanan Bridge Co.* v. *Campbell et al,* 60 O. S., 406, and *Vindicator Printing Co.* v. *State,* 68 O. S., 362, distinguished.

2. Moreover, this statute does not so operate upon causes of action as to change their nature, or remove any infirmities or conditions that may attach to them, or any defenses that may be interposed to them, such as *res judicata* or voluntary payment.

3. While a prosecuting attorney is empowered under this statute to institute an action for recovery of money paid for a bridge under an

illegal contract, recovery of the whole amount paid will not be permitted unless a willingness is exhibited to relinquish any claim of the county to the bridge.

4. Where the facts pleaded show good faith in all that was done, failure through inadvertance to file an auditor's certificate that the money needed to carry out the contract is in the treasury, as required by Section 2834$b$, does not necessarily render the contract so void that no rights or liabilities can grow out of the transaction; but where the contract has been repudiated, and there is no fraud claimed, and effort is being made to place the parties as nearly as possible in *statu quo*, the effort should be forwarded by the courts.

*Affirming, *State, ex rel Hunt*, v. *Fronizer et al*, 3 N. P.—N. S., 303.

Points from brief of Basil Meek, of counsel for plaintiff in error:

For a statement of the facts in this action, reference is made to 3 N. P.—N. S., 303.

The question in this case is whether or not Section 1277, Revised Statutes, 1880, as amended in 1898 (93 O. L., 408), authorizes the recovery back by the prosecuting attorney of money paid on county commissioners' bridge contracts, void under Section 2834$b$, Revised Statutes, for the lack of the county auditor's certificate as therein required without first offering to return to the contractors the bridge structures erected by them and accepted by the county commissioners under such void contracts? The contention in other respects was decided in the common pleas court in favor of the plaintiff.

Prior to the amendment of 1898 payment on such void contracts, where they were not completed, could be perpetually enjoined, but if the injury had already been done by the completion of the contract and the payment of the money, the public was without remedy. On the other hand, if payment was so enjoined, no action could be maintained by the contractors for the recovery of the value or any part of it, of such bridge structure.

The case of *The Buchanan Bridge Co.* v. *Campbell et al*, 60 O. S., 406, is in point, and was one where a contract for bridge material was made in 1894, in disregard of the statutory requirements. The material had been furnished to completion, accepted by the commissioners *and in use by the public*. Payment of the contract price being perpetually enjoined, an action

was brought to recover the fair value of such material. The Supreme Court held:

"A contract made by the county commissioners for the purchase and erection of a bridge in violation or disregard of the statutes on the subject, is void, and no recovery can be had against the county for the value of such bridge. Courts will leave the parties to such unlawful transactions where they have placed themselves, and will refuse to grant relief to either party." 60 O. S., *supra*.

The purpose of the amendment was to protect the public against the acts of county commissioners in disregard of statutory requirements as to their duty, whether acting ignorantly or otherwise, and to provide a remedy as full and complete for the recovery back of money actually paid on such void contracts as that previously existing to prevent such payment.

In the case of *The Vindicator Printing Co.* v. *The State of. Ohio,* 68 O. S., 362, held:

"The act of April 25th, 1898 (93 O. L., 408), clothes the prosecuting attorney with power to recover back money so illegally drawn from the treasury on and after its passage."

And on page 372, the court say:

"Manifestly it is the purpose of this statute to re-imburse the treasury for unauthorized payment for it, *not otherwise provided for.*"

This right of action is provided for *tax-payers* through the prosecuting attorney, and not for the county commissioners, nor for any other party to such void contracts. It is significant that no provision whatever is made in the amended act for any party but the public. All parties to such void transactions are left without remedy, just where they placed themselves.

If, as held in *Bridge Co.* v. *Campbell et al, supra,* no action could be maintained by the bridge contractor under such void contract for the recovery as upon an implied contract, of the fair value of the structure furnished, where payment of the contract price had been perpetually enjoined, it is difficult to see the consistency of holding that the structure itself shall be returned by the public in pursuing the remedy provided for it alone, not being a party to the void transaction.

This would be equivalent to holding that the bringing of an action to obtain the benefit of the remedy provided for the public, would operate to purify the unlawful transaction between the commissioners and the bridge company, or its agents. Equities do not arise from unlawful transactions. Parties seeking equity must have clean, not soiled, hands. The defendants were bound to, and did know the law (60 O. S., 425), and having acted in disregard of its provisions, did so at their peril, and must suffer the consequences, whatever they may be.

The public had nothing to do in making such void contracts, nor placing the structures contracted for, and are under no obligations to restore them to the outlawed contractors or their agents. What such outlawed contractors might do toward reclaiming, and themselves removing such structures, is not a question in this case.

As held in *Jones, Auditor,* v. *Commissioners of Lucas County et al,* 57 O. S., 189:

"The board of county commissioners represents the county in respect to its financial affairs only so far as authority is given to it by the statutes."

It would seem that Judge Wildman in holding, in the court below, that the bridges should be returned, must have based his decision upon the theory that some act of the public by way of a rescission, is required to avoid these contracts notwithstanding Section 2834b declares them void, as he makes frequent use of the term "rescission."

The contracts involved being in contravention of law, null and void from the beginning—not voidable—no act of rescission or restoration is required from the prosecuting attorney to the public, neither being a party to the contract.

"The act of rescinding is where a contract is canceled, annulled or abrogated *by the parties or one of them.*" Black's Law Dict., "Rescission."

The author (Black) under this term quotes from 1 Cal., 281:

"There is a distinction between 'rescission' and 'nullity.' Nullity takes place where the act is in contravention of the law * * * Rescission is where an act, valid in appearance, conceals a defect which may make it null if demanded by any of

the parties, as for example, mistake, fraud, force, deceit, want of age, etc.   *   *   *   Nullity relates generally to public order and can not, therefore, be made good by ratification or prescription.   So that the tribunals ought for this reason alone to decide that the null act can have no effect, without stopping to inquire whether the parties to it have or have not received any injury.   Rescission on the contrary may be made good by ratification or by silence of the parties.''

In other words, rescission and restoration apply to voidable contracts, and not to nullities such as are the contracts in the case at bar.

As to the application of the terms ''void'' and ''voidable'': 28 A. & E. Ency. (1st Ed.), 475, and note 2; 6 Metc. (Mass.), 415; 14 O. S., 68; 1 Ohio, 458, 468.

The amendment of 1898 being remedial should, like all remedial statutes, be construed liberally for the suppression .of the mischief provided against and the advancement of the remedy.   The old law, the mischief and the remedy are the points to be considered.   1 Cooley's Blackstone, 3d Ed., 86.

In 31 O. S., 367, the court say:

''It is a rule of interpretation universally accepted that in giving construction to the statute, the court will consider the policy and the mischief to be remedied, and give it such an interpretation as appears best calculated to advance its objects by effectuating the design of the Legislature.''

In 60 O. S., 425, *supra,* the court say:

''It is necessary to so construe the statutes in order to prevent the evils which induced the enacting of them.   If such statutes could be evaded, there would always be found some public servants who would be ready and willing to join in transactions detrimental to the public, but favorable to themselves or some favored friend.''

If such ''public servants'' and their ''favored friends'' were satisfied that the law would be construed to allow their beneficiaries to retain the money so unlawfully obtained, until such bridge structures should first be returned, they would not fear to ply their vocation, for they might reasonably conclude that the public would be slow to pursue a remedy having such a burdensome and impracticable condition attached.

Probably very few, if any, actions to recover back would be brought, and the intended remedy instead of being advanced, would be rendered futile.

PARKER, J.; HAYNES, J., concurs; WILDMAN, J., not sitting.

Error to the court of common pleas.

This case was submitted to Judge Haynes and myself; Judge Wildman, the third member of the court, having passed upon the case in the court of common pleas, and his decision there being under review, he did not sit here.

The opinion of Judge Wildman, published in 3 N. P.—N. S., 303, is so full and complete in its statement of the facts and issues as to make it unnecessary to restate the same, and for the statement of the case, we refer to that opinion.

The question in this case, is whether or not Section 1277, Revised Statutes of Ohio, 1880, as amended in 1898, 93 Ohio Laws, page 408, authorizes the recovery back by the prosecuting attorney of money paid on county commissioner bridge contracts, void under Section 2834b, for the lack of the county auditor's certificate, as therein required, without an offer to return or surrender to the contractors the structure furnished by them, and accepted by the county commissioners under such void contract, where such structures are retained by the county and may be returned.

The question arises upon demurrers to certain answers. The negative answer given to this proposition by the court of common pleas resulted in the overruling of the demurrers, and the plaintiff desiring to present that question at once to the higher courts, and not choosing to plead further, judgment was entered in favor of the defendants upon the answers.

The answers admit the allegations of the petition to the effect that the certificate required by Section 2834b of the Revised Statutes had not been furnished, but they set forth that the contracts were entered into in entire good faith and honesty of purpose, and that a failure to procure the certificate and have it filed was a mere inadvertence; that it was not done with any design to violate the law or commit any fraud or wrong. That the property furnished was of value equal to the price charged and paid, and that the property has ever since been retained

and used by the county, and is now in the possession of the county; that the county does not purpose. or offer to return it, or to allow the bridge company to have it. The contention is thereupon made that the action to recover the price can not be maintained until the county returns or at least signifies a willingness to surrender possession of the property, so far as that may be practicable, and whether that is required of the county is the real question presented.

The court of common pleas was of the opinion that relinquishment of claims to the property is required under the circumstances set forth in the answers, and admitted by the demurrers, and with that conclusion we are in accord. Very little could be added, we think, to the reasoning in support of that proposition contained in the opinion of Judge Wildman, and in the authorities upon which his conclusion was largely based.

There are some conclusions upon subordinate questions, with respect to which we are not in exact accord with Judge Wildman, or the opinion expressed by Judge Spear, of the Supreme Court, in *Printing Company v. State*, 68 O. S., 362, and we feel disposed to express our own views upon those questions.

Counsel for the plaintiff insist that Section 1277, Revised Statutes, as amended April 25, 1898, authorizing the prosecuting attorney to institute an action in the name of the state, to recover back for the use of the county all public moneys misapplied or illegally drawn out or withheld from the county treasury, or to recover for the benefit of the county, any damages resulting from the execution of illegal contracts, gives to the public when thus represented by the prosecutor a new and different cause of action from any theretofore existing in favor of the public.

Counsel for the defendants insist that this statute only confers a power upon the prosecuting attorney to represent the public in the prosecution of actions upon causes of action that are not new and are not created by this statute.

The following section, 1278, authorizes like suits to be brought by tax-payers after they have made a request upon the prosecuting attorney to bring the suit, and he has refused or failed to do so.

It has seemed to us that the contention of counsel for the plaintiff is wrong, and that the opposite contention, the view maintained by counsel for defendants, upon this proposition is correct.

It is said by counsel for plaintiff in his brief that the case of *The Buchanan Bridge Company* v. *Campbell et al*, in the 60th O. S., 406, arising upon a contract entered into in 1894 under the law as it was before the amendment of 1898, revealed the lack of the remedy which the plaintiff contends was provided by that amendment, and that the amended law was passed by the Legislature for the purpose of providing such remedy. That prior to the amendment, if a suit in injunction was brought in time, the injury was averted, but if the mischief had been accomplished, the public was remediless. That this put a premium upon successful fraud, and that the purpose of the amendment was to protect the public, and provide a remedy as complete for the recovery of money actually paid upon an invalid contract as that existing prior to the amendment to prevent such payment.

In so far as this amendment of April 25, 1898, confers the right or power to institute the action upon the prosecuting attorney we think the contention of counsel for plaintiff is correct; but that there was no cause of action in favor of the county in transactions of this kind, or no body authorized to institute suits on behalf of the county in cases like this before that amendment, we think is not true; nor do we think that the case of *The Buchanan Bridge Company* v. *Campbell et al* disclosed such disability upon the part of the county or was the moving cause of the amendment referred to. If we have the true history of the moving cause of this amendment, and we think we have, it was a desire to have suits instituted by some other authority than the county commissioners against certain county officers to require them too convert back into the treasury certain funds they were charged with having illegally drawn as fees and compensation, and therefore the power to institute the suits was conferred upon prosecuting attorneys. A case of that character afterwards came before this court, and we decided that the amendment was ineffectual to accomplish the object sought for the reason that the law as amended contains no provision that it shall reach past transactions; and that

holding was made under Section 79 of the Revised Statutes, which is a statutory declaration of the general rule and principle that statutes have a prospective operation, unless the purpose to have them act retrospectively is made distinctly manifest.

Before this statute of April 25, 1898, was passed, Section 845 of the Revised Statutes provided that—

"The board of county commissioners shall be capable of suing and being sued, pleading and being impleaded in any court of judicature, and of bringing, maintaining and defending all suits, either in law or in equity, involving an injury to any public, state, or county road, ditch, drain, or water-course established by such board in their county, and for the prevention of injury to the same; and any such board or county commissioners shall be liable in their official capacity for any damages received by reason of the negligence or carelessness of said commissioners in keeping any such road or bridge in proper repair; *and to ask, demand and receive, by suit or otherwise,* any real estate or interest therein, whether the same is legal or equitable, belonging to their county or *any sum or sums of money or other property due to such county,* and the money so recovered in any case shall be by them paid into the treasury of the county, and they shall take the treasurer's receipt therefor, and file the same with the auditor of the county."

They were the general financial agents of the county, authorized to bring actions for the protection of its property, or the recovery of money or property belonging to the county.

It was held by the Circuit Court of Hamilton County, in 1889, in the case of *The State of Ohio, by John Schwartz, Prosecuting Attorney of Hamilton County,* v. *John Zumstein et al,* and certain other actions all decided and reported at the same time, and found in Vol. 4, Ohio Circuit Court Reports, page 268, that—

"Where money is illegally drawn from the county treasury, the prosecuting attorney of the county, in the absence of a statute authorizing him to do so, can not bring an action in the name of the state, for the use of such county, and recover a judgment therefor. Section 1277, Revised Statutes, only authorizes him to sue in such a manner as to restrain a threatened misapplication of the funds of the county, or the completion or execution of a contract in contravention of the law of the state, or which was procured by fraud or corruption; and no other statute authorizes him to bring an action in cases like these."

And that seems to have been the law with reference to the power of prosecuting attorneys in the premises up to the time of this amendment of Section 1277.

That case was affirmed by the Supreme Court, and that case, we believe, is the one which disclosed the ability of prosecuting attorneys to maintain actions of this kind. But the court added, and it appears as part of the syllabus, that—

"That duty (the duty to institute such actions) is imposed upon the county commissioners as the financial representatives of the county."

In the case of *Jones, Auditor,* v. *The Commissioners of Lucas County,* reported in the 57th O. S., page 189, with other cases decided at the same time, the question of the right or power of the commissioners to institute an action of that character (that particular case being an action to recover back from the auditor fees which it was charged he had illegally drawn) it seemed to counsel was involved, and so it was discussed, but the Supreme Court did not find itself obliged to pass upon it for the reasons stated in the opinion by Judge Spear. I quote from page 209:

"A question much argued, whether or not there can be a recovery back by the commissioners, we think does not arise upon the record in this case, because of the agreement of the parties. embodied in the submission, that if the allowance is found not to be regular and proper under the law, judgment is to go against the defendant."

But by the court of common pleas and the circuit court of this circuit, it had been determined in that case that such action might be maintained by the county commissioners.

We are not sure that the question has been passed upon distinctly by the Supreme Court, but we are confident that the decision of this court in the case of Jones, Auditor, and the decision of the Circuit Court of Hamilton County in the case to which I have referred, were correct upon that point.

In the Buchanan Bridge Company case, it does not seem to me that any disability operating to the disadvantage of the county was disclosed. Nothing of that kind appears to have been commented upon or mentioned. In that case, the county had received the bridge and continued to keep it, notwithstanding the fact

that it had not paid for it.   Whether it had the right to keep the bridge, whether it might keep it, in spite of the bridge company, without paying for it was, a question not mooted; at least, not presented to the court for its consideration or decision and not decided.   At the very close of the opinion by Judge Burket, this remark is made:

"In this case both parties have acted in disregard of the statute, and the court will leave them where they have placed themselves, and refuse to aid either."

And in argument here, a great deal seems to be made of that expression by Judge Burket.   That was an action upon contract.   The bridge company having failed to receive pay for the bridge, and it having been determined it could not enforce the express contract, was seeking to recover upon a *quantum valebant*, upon an implied promise to pay so much as the bridge was worth; and it is with respect to that state of facts and with respect to the attitude of the parties there—their effort to undertake to enforce contractual rights growing out of the transaction—that we understand Judge Burket to be speaking; and of course he there states the general rule and principle that where a contract is void, in any efforts the parties may make to enforce contractual rights the court will not aid them, but it will still leave them where they have placed themselves,   But it does not follow that there may not be rights arising out of the transaction—rights for the enforcement of which the law affords a remedy, and where a remedy like that pursued in this case is given it does not follow that it is enforcible unconditionally.

It was certainly not very severe upon the county in that instance for the court to pronounce that it would leave the parties where it found them, for the reason as I have said the county had both the bridge and the money.   But we do not understand that as meaning that if the county had paid out the money either upon receiving the bridge, or without having received it, the county would be without remedy to recover the money.   We have no doubt that the county had such a remedy in such a case, and that not by virtue of the amendment of Section 1277, but by virtue of the general principles of law, to be enforced by the commissioners under Section 845.   But because there were many

transactions arising in which the commissioners were purchasers, and the public was not likely to be protected by the institution by the commissioners of actions that must impeach their own conduct, it was well and wise to enact this amendment of 1277, placing the authority to bring such actions in another public officer, or if he failed, then in a tax-paying citizen. .

In the course of his opinion, to which I have already referred, Judge Wildman says as follows:

"Until the amendatory statute of 1898, a county whose officials paid out funds in fulfillment of invalid contracts, had no recourse on the recipient. This principle, recognized in the Buchanan Bridge Company case, *supra*, subjected an innocent public to loss because of the voluntary, but unauthorized, acts of its agents. To cure the manifest injustice of the principle, a new remedy was given to the public by the amendment. An action was provided for the recovery of the money and its restoration to the public fund. The reason for the amendment is manifest. The agents of the county exceeded their authority, and although they acted voluntarily the county did not voluntarily part with its money. Voluntary acts of the officials were not the voluntary acts of the public."

Therein it will be observed his views are in harmony with those expressed by counsel for plaintiff in error.

In the case of *Printing Company* v. *The State*, 68 O. S., 362, Judge Spear says of this amendment, pages 372-373:

"Manifestly it is the purpose of this statute to reimburse the treasury for unauthorized payments from it not otherwise provided for. It is in one sense a remedial statute, and yet it gives a right of action which before its enactment did not exist, and could not, we think, apply to past transactions."

Judge Spear appears to deduce therefrom that this statute authorizes the recovery back of the money notwithstanding it may have been voluntarily paid. That cuts off the possible defense of voluntary payment. The court had already in *Jones* v. *Commissioners* determined that the defense of *res judicata* could not be interposed in a suit by the commissioners though they had allowed the claim, where the claim was wholly illegal. That principle has been re-affirmed in a number of cases since, including the printing company case; and we think that for substantially the same reasons the defense of voluntary payment could not have

been interposed successfully against a claim asserted by the county commissioners or the prosecuting attorney on behalf of the county or public, for funds illegally paid out by county officers, and that it was not necessary to invoke the amendment of Section 1277, or to construe it as modifying rights of action, in order to determine that question against the printing company.

If an auditor, without authority of law, should draw a warrant in his own favor, or in favor of another, and the treasurer should pay that warrant, and an action were brought to recover back the money from the recipient, could the recipient ever have interposed the defense that the money thus payed to him without authority of law was voluntarily paid, and that therefore it could not be recovered back? We have not made a study of or search for authorities upon this proposition, but it seems to us so apparent that that defense could not be interposed under such circumstances, that we have not deemed it necessary to find authorities. We do not understand that public officers can make a raid upon the public funds and pay them out illegally, and that the persons receiving the funds can, in an action to recover them back, defend upon the theory that because the officers have acted voluntarily in an effort to rob the public they have bound the public under some doctrine of estoppel, or voluntary payment. The cases cited in the opinion in the printing company case as supporting the doctrine of voluntary payment in the case of payment of public funds by public officers do not any of them seem to us to support such defense where the payment is upon a claim or demand wholly illegal.

In the case of *Printing Company* v. *The State of Ohio*, the public could not recover back on account of the bills for printing paid before the amendment, for the reason that the statute giving authority to the prosecuting attorney to pursue this remedy, does not relate to past transactions; but it seems to us that if the action had been prosecuted by the board of county commissioners instead of the prosecuting attorney, the plaintiff would have met with no such difficulty as to past transactions.

According to our view, Section 1277, both as it stood before the amendment and as it stands now as amended, is not a statute defining rights or giving causes of action, but it is a statute conferring powers to pursue causes of action by appropriate suit or

action, in some instances by bills in equity, and by injunction, and in other cases, where it would be appropriate ''by civil action in the name of the state.''

We do not understand that this statute so operates upon causes of action as to change their nature, or that it so operates upon them as to remove any infirmities or conditions that may attach to them, or so as to remove any defenses that might be interposed to them. In cases like this, as I have intimated, we think it is well settled that the defense of *res judicata* and the defense of voluntary payment may not be interposed, but if the case were such before this amendment as that the plea of *res judicata,* or voluntary payment may not be interposed; but if the case were pose that such right of defense is not taken away or destroyed by the amendment. If the defense of the statute of limitations were interposed, would it be argued, could it be said that because this statute authorizes the prosecuting attorney to bring an action to recover the money back, that cuts off the defense of the statute of limitations? that by virtue of the statute he must recover it back? that it determines in the first instance what the result of the action must be? that it so operates upon the cause of action as to deprive the defendant of defenses that he might otherwise have to it? We think not. The statute does not say expressly, and we think it is not intended to imply that the usual legal and equitable incidents of the transaction affecting the rights of the persons asserting the claim, or the rights of persons defending against the claim, shall be altered by the statute. It simply says the claim, whatever it may be, may be prosecuted in the name of the public, and for the benefit of the public, by the prosecuting attorney, or if not by him, by a tax-payer.

In the expression of these views, we appreciate the fact that we are differing somewhat from judges of recognized ability and reputation, for whose views we have the greatest respect; but it appears to us that in thus expressing such views in deciding the points decided in the cases, they went beyond what was necessary to the decisions, and after due consideration such views seem to us too be erroneous.

What the further results may be if it shall be disclosed that the county may not be able or willing to make restitution of or relinquish all claim to the property, we do not now attempt to say

or forecast. We leave that for future development. We do say, that it appearing that the county has not shown a willingness or disposition to return or relinquish its claims to the property, and no disability to do so being apparent, that in our opinion discloses a defensive position; that while this is not precisely an action for the rescission of the contract, it is of that nature, it is an action for the rescission or undoing, so far as possible, of transactions which were initiated by a contract, and which grew out of a contract. The contract itself is void. No contractual rights arose out of it, and there are no contractual rights to be enforced. But the fact remains that a bridge has been obtained by the county, that payment for the bridge has been made and that both parties to the transaction acted in good faith, and the county suffered no actual loss; and that because of the illegality of the transaction the public, through the prosecuting attorney, is authorized to sue to recover the money paid. The bridge appears to be in the possession and use of the county, and we think the county before it should be permitted to recover the whole amount (and that is what it seeks to recover) should at least evince a willingness to relinquish any claim to the bridge.

As I have already said, the facts as pleaded and confessed by the demurrer show good faith in the transaction, and that the failure to furnish the certificate was a mere inadvertence. If there were fraud in the transaction the rights of the parties might be somewhat different on a question of rescission, but can it be said that because of Section 2834b, which requires the certificate for the evident purpose of preventing public authorities from entering into contracts which may require the payment of money, unless the money is on hand to make the payment—preventing them from going in debt—can it be said that in all instances, no matter what the circumstances, if this certificate is not placed on file, the contract is so utterly void that no rights or liabilities can grow out of the transactions? We think that is not true, even though contractual rights may be vitiated and extinguished. We can imagine a case where fraud might be perpetrated upon a person selling a bridge to the county, a bridge company if you please, by a representation that the certificate was on file, by an exhibition of something which purported to be a genuine certificate, but which was not—where as a matter

of fact the certificate required by law was not on file. Will it be said that in a case of that kind, where the county had obtained the property, it might retain it without paying for it? A certificate might be placed on file, but one so defective in character that it would not come up to the requirements of the statute, and yet the parties might proceed in good faith, supposing it to be a good and sufficient certificate. If it should turn out that it was not, would it be said that this statute is so drastic that the result would be that the county could keep the property without paying for it. It is to be remembered that statutes are not to be construed as imposing penalties or forfeitures unless that purpose is so clear and manifest that the conclusion that such was the purpose can not be escaped; and here we find nothing in the statute indicating a purpose to impose a penalty or a forfeiture, but the purpose, so far as we can gather it from the statute, is only to save the county or public from wrong or imposition or loss; and where the contract is repudiated and there is no fraud in the transaction, and there is an effort to place the parties in *statu quo*, as nearly as possible, we think that effort should be forwarded by the courts.

The judgment of the court of common pleas will be affirmed.


WILDMAN, J.

While sitting as a judge in the common pleas court, I passed on the demurrer just considered by Judge Parker, and for that reason have taken no part in the review of the case by the circuit court.

While the opportunity offers, however, I wish to place myself in accord with my associates upon the circuit bench, and with what I believe to be a correct interpretation of the law, by assenting to the criticism which has been made upon certain expressions in the opinion rendered by me in the court below.

I refer to the expressions following the dicta of one of the judges of the Supreme Court in the interpretation of the statutes in force at the time of the decision of the Vindicator Publishing Company case, and indicating that a county at that time had no cause of action to recover, through its officials, money which had been paid as the price of bridges under invalid contracts.

My present judgment is that the county had such cause of action, even prior to the enactment of the amendment of 1898, and that the amendment was the designation of an official who might institute the suit on behalf of the county. Before that time, the power to protect the interests of the county so far as suing to recover moneys unlawfully paid out was concerned, resided, under the general statutes, in the county commissioners. By reason of possible complicity of county commissioners in the making of illegal and invalid contracts, the Legislature by this amendment gave to another public officer, the power to represent the county in the protecting of its interests. Provision had already been made that the prosecuting attorney might, by proper suits, prevent the carrying out of unlawful contracts, but there was no provision that the prosecuting attorney could so represent the county in the recovery of money which had been illegally paid from its treasury.

In order further to protect the interests of the public the amendment of 1898 empowers any tax-payer to represent the county in case the prosecutor refuses to act as such representative. By these enactments the law clothes either the prosecuting attorney or the tax-payer with a certain representative capacity to act for the county, not only in the endeavor to bring back to the treasury the funds which have been unlawfully taken therefrom, but also in making such proffer for the county as the county should justly make as a condition precedent to obtaining redress of the wrong which has been committed against the public.

It is because of the fact that the opinion which I announced from the common pleas bench has gone into one of the published journals, and because the decision which has been rendered by the circuit court at the present hearing is very likely to be reported, that I have thought best to make these statements in order to harmonize any apparent difference between the opinion entertained by my associates and my own.

*M. W. Hunt* and *Basil Meek*, for plaintiff in error.

*Hunt & Garn*, for defendant in error.